**Affirmed and Opinion filed February 20, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00690-CR

---

### RICARDO TORRES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

### On Appeal from the 212th District Court
### Galveston County, Texas
### Trial Court Cause No. 10CR2934

---

## O P I N I O N

Ricardo Torres appeals his conviction for aggravated sexual assault of a child, challenging the sufficiency of the evidence to support his conviction, the child complainant's competency to testify, the admission of outcry-witness testimony and the opinion testimony of two nurses, the denial of motions for mistrial based on allegations of improper jury argument, the jury's conduct in reaching a verdict in ten minutes, and the quashing of subpoenas at a hearing on appellant's motion for new trial. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The record reflects that the complainant was the appellant's step-daughter at the time of the alleged assault.  The child's first outcry came after her biological father observed redness and puffiness in her genital area and called her aunt for help assessing the situation.  The child disclosed sexual abuse to her aunt.  The father and aunt then took the child to a sexual assault nurse examiner (hereinafter "SANE") who observed the same redness on the child's genitals.  The child informed the SANE that "Rick" or "Ricky" had touched her.  She was three years old at the time.  Approximately two years later, the child made outcry statements to the proprietor of her daycare center.  After the daycare proprietor called the Texas Department of Family and Protective Services, the child had another SANE evaluation and again disclosed that appellant had touched her genitals.

Appellant was charged by indictment with the offense of aggravated sexual assault of a child.  The charge was enhanced by a prior felony conviction.  Appellant pleaded "not guilty" to the charged offense.  At trial, the complainant, then seven years old, testified that appellant would take her clothes off and touch her "private part," referring to her genitals, with his fingers or his "wee wee."  Several witnesses testified at the trial including the daycare proprietor, investigating detectives, two nurses, a therapist, officials associated with the Texas Department of Family and Protective Services, and the child's mother, father, aunt, and grandparents.  Appellant also testified, denying the alleged conduct and accusing most of the other witnesses of lying.

The jury found appellant guilty of the charged offense, found the enhancement paragraph to be true, and assessed appellant's punishment at confinement for life.  Appellant filed a motion for new trial, which the trial court denied.  This timely appeal followed.

## II. ISSUES AND ANALYSIS

### A. Is the conviction supported by legally sufficient evidence?

In his eighth issue, appellant challenges the sufficiency of the evidence to support his conviction. In evaluating a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). Rather, the verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact is the sole judge of the credibility of the witnesses and of the strength of the evidence. *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the sexual organ of a child under the age of fourteen, by any means. *See* Tex. Penal Code Ann. §§ 22.021(a)(1)(B)(i), (iii), (a)(2)(B) (West 2011). *See also* Tex. Penal Code Ann. §§ 22.011(c)(1), 22.021(b)(iii) (West 2011). In this case, the indictment alleged that appellant intentionally or knowingly caused the penetration of the sexual organ

3

of the complainant, a child who was then younger than fourteen years of age, by defendant's finger.

At trial, the complainant testified that "Rick," whom she identified as appellant, who used to be married to her mother, had hurt her, and had done "bad things." According to the complainant, appellant took her clothes off and touched her in her "private part," which she described as a place on the lower front of her body that no one else should touch. The complainant testified that the conduct occurred either in her mother's room or in the complainant's own room when her mother was shopping. Because the complainant was afraid to testify, the complainant wrote some answers to the prosecutor's questions on a numbered list. Using this list, the complainant orally confirmed that appellant touched her "pee pee" with his finger and "wee wee" on five occasions when no one was around. The complainant testified that appellant touched her in the same place each time. According to the complainant, appellant threatened harm to the complainant's mother if the complainant told anyone about the conduct.

The complainant's aunt, to whom the complainant first made outcry in 2007, testified that the complainant's father contacted her when, as he bathed the three-year-old, he observed redness, irritation, and puffiness in the complainant's genital area. The aunt also observed the same red, irritated area and queried the complainant. The complainant informed the aunt that "Big Ricky" touched her vagina by putting his fingers "down there" and then asked the complainant to lick his fingers. The aunt understood "Big Ricky" to be appellant, the complainant's stepfather, who was not the same person as the complainant's younger stepbrother, "Little Ricky" or an older family friend, "Ricky," whom the complainant saw once or twice a year.

Nurse Nell Loewen testified that during a SANE examination in September

4

2007, the complainant, without any prompting, reported that "Ricky touches me right there," and the complainant pointed to inside her vaginal area. The complainant stated that she had been instructed to lick Ricky's finger. The nurse observed redness on the complainant's interior folds of her vagina, on the outside of the complainant's vagina, and between the complainant's rectum and vagina; the same locations where the complainant had indicated. According to the nurse, the redness and the location of the redness were consistent with sexual abuse. Although the nurse testified that cleaning agents or improper hygiene could cause redness, in such circumstances the nurse would expect to see a larger area of irritation. The nurse opined that the physical evidence and the complainant's statements of abuse were consistent with what she usually would expect to see in sexual-assault patients.

In July 2009, the complainant made outcry to the proprietor of her daycare facility. The daycare proprietor testified that the complainant informed her, through tears, that "Daddy Ricky" placed his fingers in her vagina and in her bottom. She reported that appellant would remove his fingers and ask her to smell and taste them. The complainant reported that these acts hurt and that appellant knew this because she cried. Shortly after this outcry, the complainant underwent another SANE examination with nurse Angie Attaway. During the SANE examination, the complainant again disclosed sexual abuse by appellant. She also informed the nurse that appellant told her not to talk about his conduct. The nurse did not see any physical evidence of sexual abuse, but opined, based on the complainant's history, that the complainant had been sexually abused. The record reflects that the complainant made additional outcries of abuse by appellant in 2008 and 2010.

The complainant's mother testified that she left the complainant alone with

the appellant. She admitted to having lied about this fact to officials involved in the investigations and that she had done so in an effort to protect appellant. She stated that she previously had expressed the belief that the complainant's father was coaching the complainant to fabricate allegations because of their disputes over custody and child support. Appellant testified, denying ever having been alone with the complainant and that any abuse ever occurred. His testimony conflicted with the majority of other witnesses as to various collateral matters; he accused them all of lying.

Appellant argues that this evidence is insufficient to support his conviction because the complainant's father coached the complainant to fabricate allegations. Appellant makes the following arguments in support of his assertion:

- The complainant's "outcries" coincided with peaks in the father's child-support arrearages, and his family regarded the accusations as evidence in their custody dispute over the complainant.

- The complainant's father did not spontaneously discover the complainant's rash. Rather, it was disclosed to him by the mother.

- Texas Department of Family and Protective Services investigator Dwight Lack noted that the complainant might have been coached and cautioned the father not to interview the complainant.

- The complainant's memory was subject to manipulation by various adults and she had to be "spoon-fed" by the prosecutor at trial.

- The complainant's outcry to the daycare proprietor was not spontaneous; it was elicited by multiple questions. The daycare proprietor also could not account for a cell-phone recording of the complainant's outcry statements.

- There was no objective medical evidence that the complainant had been penetrated.

6

- Nurse Attaway testified using notes that were not originals, but were transcribed following an interval during which she may have spoken with persons associated with the prosecution.

These arguments do not show that the evidence is legally insufficient to support appellant's conviction.

First, the testimony of a child complainant, standing alone, is sufficient to support a conviction for sexual assault. *See* Tex. Code Crim. Proc. Ann. Art. 38.07 (West 2011); *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (concluding a child complainant's unsophisticated terminology alone established element of penetration beyond a reasonable doubt). Despite the complainant's use of unsophisticated terminology, she offered enough details to support the conviction for aggravated sexual assault.[1] *See Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.). In considering all of the evidence, the jury reasonably could have believed the complainant's testimony, especially given the record evidence that the complainant's same allegations were corroborated over the course of several years by others to whom the complainant had made outcry. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (holding that outcry evidence, even if contradicted at trial, retains probative value sufficient to prove an element of indecency with a child).

Second, appellant presented the argument that the complainant may have been coached to the jury and the jury rejected the argument. Appellant's arguments, considered individually and collectively, do not conclusively

---

[1] To the extent appellant asserts that the child complainant had to be asked leading questions and that her memory was subject to manipulation by adults, the record does not suggest that the State's leading questions supplied the child complainant with a false memory. *See Padilla v. State*, 278 S.W.3d 98, 106 (Tex. App.—Texarkana 2009, pet. ref'd). The rules of evidence do not forbid the use of leading questions on direct examination; their use is permitted, within the trial court's discretion, as necessary to develop the witness's testimony. Tex. R. Evid. 611(c); *see Jordan v. State*, 226 S.W.2d 449, 451 (Tex. Crim. App. 1950) (observing that it is permissible to ask leading questions of an unwilling or hostile witness).

demonstrate that the complainant was coached. Both the complainant and her father testified that he had not asked her to tell lies about the appellant. The jury was entitled to consider all of appellant's arguments in determining how to weigh the testimony from the trial witnesses, but none of the arguments would preclude a rational juror from accepting the complainant's testimony that appellant sexually assaulted her. Accordingly, the determination of whether or not the complainant was coached was within the province of the jury. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Bargas*, 252 S.W.3d at 889.

Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Bargas*, 252 S.W.3d at 889. Therefore, the evidence is sufficient to support appellant's conviction for aggravated sexual assault of a child. We overrule appellant's eighth issue.

**B.    Did the trial court err in determining that the complainant was competent to testify?**

In his first issue, appellant contends that the trial court erred in concluding that the complainant was competent to testify. Appellant asserts that the complainant did not demonstrate she understood the gravity of the oath. Appellant argues that because a child cannot be prosecuted for perjury and because the complainant stated her parents did not discipline her in any significant way, the complainant was under no genuine compulsion to tell the truth. Appellant asserts that the complainant was also incompetent to testify because she lacked the capacity to verbally articulate the events. Under his first issue, appellant also contends that the complainant's testimony violated the Confrontation Clause because she was purportedly not available and subject to cross-examination at trial due to her alleged inability to remember many matters.

A trial court's determination of whether a child witness is competent to testify will not be disturbed on appeal absent an abuse of discretion.[2] *Dufrene v. State*, 853 S.W.2d 86, 88 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). An appellate court must review the child's entire testimony to determine if the trial court abused its discretion. *Id.* A trial court does not abuse its discretion if its ruling was within the zone of reasonable disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

As a general rule, a witness is presumed to be competent to testify. Tex. R. Evid. 601; *Dufrene*, 853 S.W.2d at 88. A child is not competent to testify when, after an examination by the trial court, the child does not appear "to possess sufficient intellect to relate transactions with respect to which [the child is] interrogated." Tex. R. Evid. 601(a)(2); *Hogan v. State*, —S.W.3d—,—, 2013 WL 5728159, at *1 (Tex. App.—Houston [14th Dist.] 2013, pet. filed); *Dufrene*, 853 S.W.2d at 88. When a party challenges the competency of a child witness, the trial court will consider whether the child witness possesses (1) the ability to intelligently observe the events in question at the time of the occurrence, (2) the capacity to recollect the events, and (3) the capacity to narrate the events. *See Hogan*, —S.W.3d at —, 2013 WL 5728159, at *1. The third element involves the ability to understand the moral responsibility to tell the truth, to understand the questions posed, and to frame intelligent answers. *See id.* Although the child need not understand the "obligation of the oath," the trial court must impress the child with the duty to be truthful. *See Dufrene*, 853 S.W.2d at 88. There is no precise age under which a child is deemed incompetent to testify. *See Fields v. State*, 500 S.W.2d 500, 502–03 (Tex. Crim. App. 1973); *Clark v. State*, 659 S.W.2d 53, 55 (Tex. App.—Houston [14th Dist.] 1983, no pet.).

---

[2] We presume, without deciding, that appellant preserved error in the trial court regarding his objection that the complainant was not competent to testify.

9

At both the competency hearing and in the jury's presence at trial, the complainant indicated that she understood the need to be truthful. The complainant raised her hand and took an oath to tell the truth, stating that the oath meant she would tell the truth, which she characterized as "important." According to the complainant, a "truth" is "real" and a "lie" is "not real." Although the trial court's examination may have been short, the complainant promised to tell the truth and demonstrated that she knew of the duty to be truthful. *See Dufrene*, 853 S.W.2d at 88.

Appellant argues that even if the complainant knew of the duty to tell the truth, she was not competent to testify about events that occurred when she was three years old because she could not remember them.[3] The record does not reflect that the complainant testified to any events that she did not remember. To the contrary, she specifically described the appellant's conduct and was able to provide details about the incidents. On cross-examination, the complainant testified that she remembered when both of her parents lived together and she recalled the first time she met appellant.

At times, the complainant's responses showed some conflict and confusion. But, overall her testimony indicated sufficient accuracy in her recollection. *See Berotte v. State*, 992 S.W.2d 13, 17 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd); *Long v. State*, 770 S.W.2d 27, 29 (Tex. App.—Houston [14th Dist.] 1989), *rev'd on other grounds*, 800 S.W.2d 545 (Tex. Crim. App. 1990). Any inconsistent testimony about a specific event might affect the complainant's credibility, but not her competency. *See De Los Santos v. State*, 219 S.W.3d 71, 81

---

[3] The record reflects that the abuse occurred over a number of years. The complainant did not specify which incident she was describing in her testimony. Accordingly, it is not clear that the child was testifying about the conduct that occurred when she was three years old as opposed to conduct that occurred later.

(Tex. App.—San Antonio 2006, no pet.); *Berotte*, 992 S.W.2d at 17. Furthermore, although the complainant had difficulty recalling some collateral matters, a child's inability to testify to collateral matters does not affect the child's competency. *See Clark*, 659 S.W.2d at 54–55 (concluding that three-year-old child's testimony demonstrated she understood the incident well enough to describe it even if she did not use sophisticated language and had difficulty answering questions pertaining to collateral matters). In light of the complainant's answers to the qualification questions and her testimony as a whole during the proceedings, the record demonstrates that she possessed the ability to intelligently observe the events in question at the time of the occurrence, was capable of recollecting the events, and was capable of narrating the events. *See Hogan*, —S.W.3d at —, 2013 WL 5728159, at *1–5; *Dufrene*, 853 S.W.2d at 88–89; *Long*, 770 S.W.2d at 29; *Clark*, 659 S.W.2d at 54–55. Accordingly, the trial court did not abuse its discretion in determining that the seven-year-old complainant was competent to testify. *See Hogan*, —S.W.3d at —, 2013 WL 5728159, at *1–5; *Dufrene*, 853 S.W.2d at 88–89; *Long*, 770 S.W.2d at 29; *Clark*, 659 S.W.2d at 54–55.

Under his first issue, appellant also argues, however, that even if the complainant was competent to testify, her testimony violated the Confrontation Clause of the Sixth Amendment to the United States Constitution because she purportedly was not available and subject to cross-examination at trial due to her alleged inability to remember many matters. Appellant did not object to the complainant's testimony while she was on the stand. Rather, appellant first voiced his objection under the Confrontation Clause to the complainant's testimony four days after the complainant testified, in appellant's motion for directed verdict after the State rested its case in chief. Appellant also raised this complaint in his motion for new trial. If appellant's objection under the Confrontation Clause were

11

sustained, the complainant's testimony would be excluded. *See Eustis v. State*, 191 S.W.3d 879, 886 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Nonetheless, appellant did not voice this complaint until several days after the complainant finished testifying and after at least one more witness had testified. While appellant suggested during the competency hearing that the trial court should ask the complainant questions regarding her memory, he did not make an objection to the complainant's testimony on the stated basis that it violated the Confrontation Clause. See *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (holding that a proffer of evidence for purposes of credibility did not preserve a Confrontation Clause argument for appeal because such a proffer did not bring the judge's attention to the appropriate evidence rule or statute). To preserve error on Confrontation Clause grounds, an objection must be made at trial as soon as the basis for the objection becomes apparent. *Prince v. State*, 192 S.W.3d 49, 58 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Appellant's Confrontation Clause complaints regarding the complainant's testimony in his motion for directed verdict and motion for new trial were untimely and did not preserve error. *See Stubblefield v. State*, 477 S.W.2d 566, 567–68 (Tex. Crim. App. 1972) (holding appellant's complaint regarding the admission of evidence was untimely and failed to preserve error because appellant first raised his complaint in his motion for directed verdict after the State had rested its case in chief); *Courson v. State*, 160 S.W.3d 125, 128–29 (Tex. App.—Fort Worth 2005, no pet.) (holding appellant's complaint under the Confrontation Clause was untimely and failed to preserve error because appellant raised it for the first time in his motion for new trial); *Hamm v. State*, 709 S.W.2d 14, 15 (Tex. App.—Corpus Christi 1986, no pet.) (holding appellant's complaint regarding the admission of evidence was untimely and failed to preserve error because appellant first raised his complaint in his motion for directed verdict after the State had rested its case in chief). Appellant

failed to preserve error regarding his objection to the complainant's testimony under the Confrontation Clause.[4] *See Stubblefield*, 477 S.W.2d at 567–68; *Freeman*, 413 S.W.3d at 204–05; *Prince*, 192 S.W.3d at 58; *Courson*, 160 S.W.3d at 128–29. Accordingly, we overrule appellant's first issue.

## C.  Did the trial court err in admitting the outcry testimony of the aunt and the daycare proprietor?

In his second issue, appellant argues that the trial court erred in admitting the outcry testimony of both the aunt and daycare proprietor because the statements lacked reliability.[5] In the alternative, appellant argues that the statute allowing an outcry witness to testify to hearsay statements is unconstitutional.

Under article 38.072 of the Texas Code of Criminal Procedure, entitled "Hearsay Statement of Child Abuse Victims," some hearsay statements are admissible in prosecuting certain offenses, including aggravated sexual assault of a child. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 1 (West 2011). The statute applies to statements that describe the alleged offense and that (1) were made by the child against whom the offense allegedly was committed and (2) were made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. *Id.* § 2(a). A statement that meets these requirements is not inadmissible because of the hearsay rule if, among other things, the trial court finds, in a hearing outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement. *Id.* § 2(b)(2). Indicia of reliability that the trial court may consider

---

[4] Even if appellant had preserved error, we would conclude that his complaint lacks merit. *See, e.g.*, *Woodall v. State*, 336 S.W.3d 634, 644 (Tex. 2011) (stating that memory loss does not make a witness who testifies at trial absent for Confrontation Clause purposes).

[5] The trial court allowed testimony from two outcry witnesses, apparently based on the conclusion that the testimony of the daycare proprietor addressed different acts. Appellant has not challenged on appeal the trial court's decision to allow testimony from two outcry witnesses.

include (1) whether the child victim testifies at trial and admits making the out-of-court statement, (2) whether the child understands the need to tell the truth and has the ability to observe, recollect, and narrate, (3) whether other evidence corroborates the statement, (4) whether the child made the statement spontaneously in his own terminology or whether evidence exists of prior prompting or manipulation by adults, (5) whether the child's statement is clear and unambiguous and rises to the needed level of certainty, (6) whether the statement is consistent with other evidence, (7) whether the statement describes an event that a child of the victim's age could not be expected to fabricate, (8) whether the child behaves abnormally after the contact, (9) whether the child has a motive to fabricate the statement, (10) whether the child expects punishment because of reporting the conduct, and (11) whether the accused had the opportunity to commit the offense. *See Norris v. State*, 788 S.W.2d 65, 71 (Tex. App.—Dallas 1990, pet. ref'd). We review the trial court's determination that the statements were reliable under an abuse-of-discretion standard. *See Garcia v. State,* 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). We will reverse a trial court's decision only when the court's decision falls outside the zone of reasonable disagreement. *Shaw v. State*, 329 S.W.3d 645, 652 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Appellant challenges the trial court's determination that the outcry statements were reliable. Appellant asserts that the outcry testimony was tainted because either the complainant's aunt, who is the sister of the complainant's father, or the daycare proprietor allegedly prompted or manipulated the complainant to state specific details of the alleged conduct. Appellant refers to the record, including the following, in support of his argument that the outcry statements are unreliable:

- the custody dispute over the complainant between the child's

14

father and the mother;

- the father's child-support arrearages;

- the complainant's rash allegedly could not have been seen if the complainant was standing in the bath;

- the complainant's father or the father's family paid the child's daycare tuition to the proprietor;

- the proprietor's license for the daycare was governed by an agency that also oversaw the Texas Department of Family and Protective Services;

- the proprietor initially informed police that her colleague had recorded the child's outcry, but neither that recording nor the complainant's files from the daycare were produced;

- an official with the Texas Department of Family and Protective Services noted the possibility that the complainant was coached by the father to make the allegations; and

- the fact that the therapist, who conducted therapy with the complainant after July 2009, sometimes worked as a contractor with the Texas Department of Family and Protective Services.

Appellant's primary argument is that the child's father had a motive to prompt the child to fabricate allegations against her step-father and that the two individuals to whom to the child made outcry, her aunt and her daycare proprietor, had a motivation to report the outcry statements. Appellant argues that the child's aunt was motivated by her relationship with the child's father and that the child's daycare proprietor was motivated to make a report because her license was governed by an agency that oversaw the Texas Department of Family and Protective Services. Appellant notes that an individual from Texas Department of Family and Protective Services mentioned in his notes that the child may have been coached. Appellant also complains that the daycare proprietor did not produce a recording of the outcry she initially told police existed, nor did she produce the complainant's daycare files.

Although appellant presented some evidence that the child's father might have a motive to coach his daughter, that evidence was contested. The aunt testified that she maintained a good relationship with both of the child's parents and that the father was surprised by the child's allegations of sexual abuse. She stated she was not aware of the specifics regarding the child's father's previous custody battle or his child-support arrearages at the time of the child's allegations. To the contrary, she testified that she decided to question the child regarding sexual abuse after observing the child's physical symptoms.

While noting that the daycare proprietor was licensed by an agency that also oversaw the Texas Department of Family and Protective Services, appellant did not provide any evidence that this relationship caused the daycare proprietor to prompt or manipulate the child into making outcry. The daycare proprietor testified that the experience was difficult for her. Her inability to produce the child's daycare file or the recording of the child's outcry does not affect the reliability of the child's statement.

Appellant produced attenuated evidence that the father may have had a motivation to coach the child. But, the record does not contain any direct evidence that such coaching actually occurred. Nor does the record contain any evidence that the child had a motivation to fabricate the allegations. Appellant did not produce evidence that the content of the outcries suggested they were unreliable. Nor did he produce strong evidence that the circumstances surrounding the outcries suggested they were unreliable. To the contrary, the timing and circumstances of the child's outcry statements suggest they are reliable. The complainant's first outcry statement was corroborated by physical symptoms and was elicited after her aunt's concern about those symptoms. The complainant's second outcry statement, which was detailed and emotional, was made to a neutral party while she was at daycare and not under the immediate influence of her father.

The trial court was vested with discretion to determine whether the complainant's outcry statements were reliable based on the time, content, and circumstances of the statements. *See Shaw*, 329 S.W.3d at 652; *Marquez v. State*, 165 S.W.3d 741, 747 (Tex. App.—Beaumont 2005, pet. ref'd). The trial court's determination was supported by the evidence and did not fall outside the zone of reasonable disagreement. *See Marquez*, 165 S.W.3d at 747 (holding trial court did not abuse its discretion in finding outcry statement reliable despite inconsistency between victim's outcry statement and testimony at trial). Accordingly, the trial court did not abuse its discretion in finding the outcry statements reliable. *See Shaw*, 329 S.W.3d at 652; *Marquez*, 165 S.W.3d at 747.

Under his second issue, appellant also argues that 38.072 is unconstitutional because it violates the Confrontation Clause. Appellant has not cited, and we have not found any place in the appellate record showing that appellant raised this issue in the trial court, and we conclude that appellant failed to preserve this complaint for appellate review. *See Freeman*, 314 S.W.3d at 204—05; *Prince*, 192 S.W.3d at 58. Accordingly, we overrule appellant's second issue.

**D.     Did the trial court err in admitting the opinion testimony of two nurses?**

In his third and fourth issues, appellant asserts that the trial court erred in admitting opinion testimony from the two nurses, Loewen and Attaway. As to her opinions and conclusions, Loewen testified at trial that "what we were seeing and what [the complainant] had told us, that was actually consistent with what we could see if what she told us happened." Attaway testified that the history she received supported her diagnosis of sexual abuse. On appeal, appellant asserts that the trial court erred in admitting the opinion testimony of Loewen and Attaway, as well as medical records to the extent the records contain these opinions, because this evidence is inadmissible hearsay, improper bolstering, and inadmissible under

17

the Confrontation Clause. In the trial court, appellant lodged hearsay and Confrontation Clause objections to this evidence. We presume, without deciding, that appellant preserved error as to his complaint that this testimony was improper bolstering.

The trial court did not err in overruling appellant's objections based on the Confrontation Clause. This clause prohibits the admission of a testimonial statement of a declarant who does not testify at trial, unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *See Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004); *Eustis*, 191 S.W.3d at 886. But, in this case, regardless of whether the declarant is the complainant, Loewen, or Attaway, the declarant testified at trial. If the declarant testifies at trial and thus is subject to cross-examination, the Confrontation Clause places no constraints at all on the use of the declarant's prior testimonial statements. *See California v. Green*, 399 U.S. 149, 162, 90 S.Ct. 1930, 1937, 26 L.Ed.2d 489 (1970); *Eustis*, 191 S.W.3d at 886. The trial court did not err in impliedly concluding that the admission of this evidence did not violate the Confrontation Clause. *See Green*, 399 U.S. at 162, 90 S.Ct. at 1937; *Eustis*, 191 S.W.3d at 886.

We presume for the sake of argument that the trial court erred in overruling the appellant's hearsay and bolstering objections to the opinion testimony of Loewen and Attaway, as well as to the medical records to the extent the records contain these opinions. Under this presumption, we must decide whether that error affected appellant's substantial rights to a fair trial. *See* Tex. R. App. P. 44.2(b); *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Id*. But, if the improperly admitted evidence did

not influence the jury or had but a slight effect upon its deliberations, such non-constitutional error is harmless. *Id.* In performing a harm analysis, we examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence. *Id.* We consider overwhelming evidence supporting the particular issue to which the erroneously admitted evidence was directed, but that is only one factor in our harm analysis. *Id.* It is the responsibility of the appellate court to assess harm after reviewing the record, and the burden to demonstrate whether the appellant was harmed by a trial court error does not rest on either the appellant or the State. *Id.*

On appeal, appellant does not specify how the testimony of the nurses harmed him, but he does assert that it improperly bolstered the complainant's testimony. The complainant made consistent statements over a number of years to a number of witnesses, including family members, police, Child Protective Service investigators, and her daycare proprietor. She made similar statements in her testimony at trial. After examining the entire trial record under the applicable standard of review, we conclude that if the trial court erred in admitting the opinion testimony of Loewen and Attaway, as well as the medical records to the extent the records contain these opinions, such error was harmless. *See Taylor v. State*, 268 S.W.3d 571, 592–93 (Tex. Crim. App. 2008); *Bryant v. State*, 340 S.W.3d 1, 12, n.4 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *Bargas*, 252 S.W.3d at 897.

We overrule appellant's third and fourth issues.

**E.    Did the trial court err in denying appellant's motions for mistrial based on allegations of improper jury argument?**

In his fifth issue, appellant asserts that the trial court erred in denying his motions for mistrial after the prosecutor made the following statements during his closing argument: (1) the complainant had told more than four people about the

abuse, (2) the twelve jurors are the only people who can "stand up" for the complainant, and (3) the defense is "throwing a bunch of stuff on the wall and hoping something sticks." The trial court sustained appellant's objections each time, directed the jury to disregard the comments, and denied appellant's motions for mistrial. We review a trial court's denial of a motion for mistrial under the abuse-of-discretion standard. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Under this standard, we view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it falls within the zone of reasonable disagreement. *Id.* A mistrial is a remedy intended for extreme circumstances, when prejudice is incurable and less drastic alternatives have been explored. *See id.* In determining whether a prejudicial event was so harmful as to warrant reversal on appeal, we consider the prejudicial effect, any curative measures taken, and the certainty of conviction absent the prejudicial event. *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

Generally, a prompt instruction to disregard by the trial court will cure error associated with improper closing argument, unless it appears the argument was so clearly calculated to inflame the minds of the jury or is of such a damning character as to suggest it would be impossible to remove the harmful impression from the juror's minds. *See Logan v. State*, 698 S.W.2d 680, 683–84 (Tex. Crim. App. 1985). None of the three statements in question rose to the level of an "extreme circumstance" that was "incurable." *See Ocon*, 284 S.W.3d at 884. Under the circumstances presented, we conclude that any potential prejudice associated with the prosecutor's statements was cured by the trial court's instructions to disregard. *See Logan*, 698 S.W.2d at 683–84. The trial court did not abuse its discretion in denying appellant's motions for mistrial. *See id.* Accordingly, we overrule appellant's fifth issue.

**F.    Did the trial court err in denying appellant's motion for new trial based on allegations of jury misconduct?**

In his sixth issue, appellant asserts the trial court should have granted his motion for new trial based on allegations of jury misconduct when the jury deliberated for ten minutes before returning a "guilty" verdict. According to appellant, the alleged misconduct deprived him of a fair trial and due process and due course of law pursuant to our state and federal constitutions. We review a trial court's denial of a motion for new trial under an abuse-of-discretion standard. *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012).

Texas Rule of Appellate Procedure 21.3(g) states that a defendant must be granted a new trial if the "jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial." No statute, rule, or case law requires a jury to spend a certain amount of time deliberating before returning a verdict. *See Ross v. State*, 220 S.W.2d 137, 321 (Tex. Crim. App. 1948) (involving jury deliberations lasting fifteen minutes). Appellant points to no other conduct to support his argument for jury misconduct other than the short duration of time the jurors deliberated. When, as in this case, the record does not reflect any jury conduct other than the length of time reaching a verdict, we cannot infer jury misconduct from this fact alone. *See Holman v. State*, 474 S.W.2d 247, 249 (Tex. Crim. App. 1971). Absent any other indication, we presume that the jurors applied the law to the facts as instructed in the jury charge. *See Ross*, 220 S.W.2d at 321. *Bell v. State*, 582 S.W.2d 800, 810 (Tex. Crim. App. 1979). Accordingly, we overrule appellant's sixth issue.

**G.    Did the trial court err in quashing two subpoenas at the hearing on appellant's motion for new trial?**

In his seventh issue, appellant asserts that the trial court erred in quashing

two subpoenas of a therapist and the therapist's attorney, allowing them to leave the hearing on appellant's motion for new trial without testifying. We review a trial court's ruling on a motion to quash under an abuse-of-discretion standard. *See Drew v. State*, 743 S.W.2d 207, 225 n.11 (Tex. Crim. App. 1987); *Emenhiser v. State*, 196 S.W.3d 915, 921 (Tex. App.—Fort Worth 2006, pet. ref'd); *Moore v. State*, 109 S.W.3d 537, 543 (Tex. App.—Tyler 2001, pet. ref'd). The right to issue subpoenas and compel testimony stems from the Sixth Amendment. *See* U.S. CONST. amend. 6; TEX. CONST. art. I, § 10. *See Coleman v. State*, 966 S.W.2d 525, 527–28 (Tex. Crim. App. 1998). The right of compulsory process is not absolute; a defendant carries the burden of a plausible showing by sworn or agreed facts that the testimony would be material and favorable. *Coleman*, 966 S.W.2d at 528; *Drew*, 743 S.W.2d at 225 n.11. Absent evidence of favorable and material testimony, a belief that a witness may be able to support the defense's case does not create materiality. *Emenhiser*, 196 S.W.3d at 921. A trial court would abuse its discretion by quashing a subpoena when a party had shown clear evidence or agreed facts that the testimony would be material and favorable to the defense. *See Coleman*, 966 S.W.2d at 528. *Ex parte Scarbrough,* 604 S.W.2d 170, 173–174 (Tex. Crim. App. 1980); *Hardin v. State*, 471 S.W.2d 60, 62–63 (Tex. Crim. App. 1971); *Emenhiser*, 196 S.W.3d at 921. This record contains no such showing.

The therapist previously had testified at trial that she engaged in therapy with the complainant following the child's 2009 outcry and that the complainant did not discuss any sexual-abuse allegations in therapy. The crux of appellant's arguments at the post-trial hearing centered on whether the therapist had engaged in hypnotic therapy during the complainant's therapy sessions. Appellant claimed that the therapist's records were missing medical billing codes, which would support his contention that the therapist had engaged in hypnotic therapy. The

22

State showed appellant's counsel where the medical billing codes were located in the therapist's records; none of the codes reflected the code for hypnotic therapy. The trial court referred to her experiences as counsel and judge in criminal cases,[6] noting that she had never seen situations involving hypnotic therapy. The judge determined that there was no reason to believe the therapist engaged in hypnotic therapy in this case, and accordingly quashed the subpoenas.[7]

---

[6] Appellant argues that the trial court judge disqualified herself by relying on her own experiences. The procedure for recusal of judges in the Texas Rules of Civil Procedure also applies in criminal cases. *See Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993). A trial court judge may be recused if she relies on her experiences and personal knowledge of the evidence and proceedings. *See* Tex. R. Civ. P. 18b(b)(3); *Dickerson v. State*, 87 S.W.3d 632, 642 (Tex. App.—San Antonio 2002, no pet.). Relying on such personal knowledge and experience is not a ground for disqualification. *See* Tex. R. Civ. P. 18b(a); *Lombardino v. Firemen's and Policemen's Civil Service Com'n*, 310 S.W.2d 651, 654 (Tex. App.—San Antonio 1958, writ ref'd n.r.e.) (noting that a judge is not subject to disqualification for relying on personal knowledge). Appellant waived his right to complain about the judge's reliance on her experience by failing to file a motion to recuse in the trial court. *See* Tex. R. Civ. P. 18a(b)(A) & (B)(ii); *Soderman v. State*, 915 S.W.2d 605, 608 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (determining that a defendant's failure to comply with Tex. R. Civ. P. 18a waived his appellate complaint).

[7] Appellant argues that in this way, the trial court acted as a fact witness, which disqualified her from hearing the case under Article V, Section 1-a(6)(A) of the Texas Constitution. *See* Tex. Const. art. V, Sec. 1-a(6)(A). This provision does not address disqualification of trial judges. *See id*. Instead, it provides for removing judges from office or otherwise disciplining them for "willful or persistent violation of rules promulgated by the Supreme Court of Texas, incompetence in performing the duties of the office, willful violation of the Code of Judicial Conduct, or willful or persistent conduct that is clearly inconsistent with the proper performance of his duties or casts public discredit upon the judiciary or administration of justice." *Id*. Appellant does not allege that the judge committed any of the conduct governed by this constitutional provision, and this case does not involve any attempt to remove or discipline the trial court judge. Moreover, presuming for the sake of argument that the trial court judge relied on her previous experience, this would not be a ground for disqualification. Under Texas Rule of Civil Procedure 18b(a), a judge is disqualified in any proceeding in which: (1) the judge has served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter; (2) the judge knows that, individually or as a fiduciary, the judge has an interest in the subject matter in controversy; or (3) either of the parties may be related to the judge by affinity or consanguinity within the third degree. Appellant does not allege the judge should be disqualified for any of these reasons. Texas Rule of Civil Procedure 18b(b)(3) does provide that a trial judge may be recused if "the judge has personal knowledge of disputed evidentiary facts concerning the

In this case, appellant failed to meet the burden of showing the therapist's testimony was both material and favorable. *See Perez v. State,* 590 S.W.2d 474, 479 (Tex. Crim. App. [Panel Op.] 1979) (holding that when it cannot be shown that subpoenaed witness had knowledge of anything material to defense, defense did not meet their burden for compulsory process). Absent a showing by appellant that the therapist's testimony was both favorable and material, there is no basis to disturb the trial court's decision to quash the subpoenas. *See Coleman*, 966 S.W.2d at 528 (holding that absent a showing, the court is not required to compel witnesses for testimony). Accordingly, we overrule appellant's seventh issue.

## IV. CONCLUSION

Appellant's conviction is supported by sufficient evidence. The trial court did not err in determining that the child complainant was competent to testify, admitting outcry-witness testimony, denying appellant's motions for mistrial based on allegations of improper jury argument, or in quashing subpoenas at a hearing on appellant's motion for new trial. Moreover, any improperly admitted evidence regarding the opinions of the nurses was harmless, and appellant's argument that the jury committed misconduct by reaching a verdict in ten minutes lacks merit.

The judgment of the trial court is affirmed.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and Jamison.

Publish — TEX. R. APP. P. 47.2(b).

---

proceeding." Appellant did not file a motion to recuse in the trial court.

24