**Affirmed and Memorandum Opinion filed December 11, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00388-CR

### ADOLPH RODRIGUEZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1472291**

## MEMORANDUM OPINION

Appellant Adolph Rodriguez challenges his conviction for continuous sexual abuse of child. He complains of the trial court's admission of extraneous-offense evidence and asserts an ineffective-assistance-of-counsel claim. Finding no merit in either claim, we affirm.

### I. BACKGROUND

Appellant was indicted under a charge of continuous sexual abuse of a child. To convict appellant as charged, the State had to prove beyond a reasonable doubt

that appellant committed at least two acts constituting the offense of aggravated sexual assault[1] against his niece, Bea,[2] when she was under fourteen years of age and appellant was at least seventeen years of age and that the first and last acts were at least thirty days apart. At trial, through the testimony of the complainant (Bea), outcry witnesses, and a medical examiner, the State put on evidence of at least five acts constituting the offense of aggravated sexual assault against Bea, when she was less than fourteen years of age and appellant was at least seventeen years of age.

According to Bea's testimony, appellant first penetrated her sexual organ in the spare bedroom at a home she shared with her aunt and appellant. Bea described the home as a house located on Sunnyside in North Houston. She recalled being in fifth grade at the time and about eleven years old. She remembered that at times she would stay in a room that had a desk and a couch with a pullout bed. According to Bea, appellant pulled her on his lap while he was sitting on the couch with his pants down. Bea did not recall how her pants were pulled down, but she reported that appellant put his penis in her vagina and that she was facing away from appellant. Bea testified that appellant was keeping watch through the window during the occurrence, looking to see if a car pulled up in the driveway.

Bea testified about another occurrence at her aunt's apartment at La Casita. She testified that she was in sixth grade on this occasion and eleven years old. According to Bea, she was at her aunt's apartment, in the company of her cousins

---

[1] A person commits an "aggravated sexual assault" if the person "intentionally or knowingly: (i) causes the penetration of the . . . sexual organ of a child by any means; (ii) causes the penetration of the mouth of a child by the sexual organ of the actor; (iii) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor" and the child is younger than fourteen years of age. *See* Tex. Penal Code Ann. § 22.021 (West, Westlaw through 2017 1st C.S.).

[2] To protect the privacy of the complainant, we identify her by the pseudonym "Bea."

2

when appellant pulled Bea onto his lap as he had at the Sunnyside house. She testified that appellant put his penis in her vagina and used a blanket to conceal the act.

Bea testified about another occurrence in the bedroom that she shared with her mother when she was living at an apartment on Fulton. She did not know how her pants came off but she testified that appellant was standing and put his penis in her vagina as she was laying down on the corner of her bed with her leg on his shoulder. Bea testified that she remembered that he had his eyes closed and appeared to be enjoying himself; she recalled that sight had made her feel sick. She testified that she was eleven years old at the time of this occurrence.

The last act constituting the offense of aggravated sexual assault to which Bea testified occurred in the living room of appellant's house on Fostoria. According to Bea, she was thirteen years old at the time, and had come to realize that what appellant was doing to her was not right. Bea testified appellant tried to put his penis in her vagina by bending her over the couch, that she resisted, but that he persisted, causing his penis to contact her vagina. According to Bea, appellant ultimately stopped and got mad.

Bea did not make an outcry at the times she claimed appellant sexually assaulted her. Later, she reported to a church friend that she had been sexually molested by her mother's sister's husband. Bea mentioned suicide. The church friend insisted that Bea tell her mother. Bea agreed, providing the church friend would be present with Bea when she told her mother. The church friend stood next to Bea as Bea told her mother "that [appellant] had raped me." Bea's mother asked the church friend to call the police.

Bea reported to the responding police officers the same things that she had reported to her mother. Upon referral to the Children's Assessment Center, Bea

3

underwent an interview and a medical evaluation.

The forensic interviewer testified at trial regarding Bea's relation of the incidents during her interview, revealing additional details about the four events, and providing clarity as to the chronology of events. The interviewer also testified about Bea's description of another incident occurring at the La Casita apartment, where appellant had given Bea alcohol and performed oral sex on Bea. Although the forensic interviewer did not recall Bea's precise age at the time of this incident, other testimony established that Bea would have been eleven or twelve years old.

In addition, the complainant's mother testified that she once had "a vibe" that appellant was interested in Bea but dismissed it. Explaining the basis for this "vibe," the mother testified that appellant paid more attention to Bea than he paid to his own daughter, that he had looked at Bea in a way that "it felt he wanted to be with her," and he had a tattoo of her name.

Appellant did not testify, nor did he proffer an alibi. Instead, the defense sought to call Bea's credibility into question, criticize the police investigation, and present appellant as a father figure. Appellant offered testimony of his adult niece, who stated that she never witnessed any inappropriate conduct, and that appellant and his ex-wife had played a parental role in Bea's life. The adult niece also explained that appellant's tattoo of Bea's name was normal in the context of the family as he treated Bea as a daughter. Appellant also elicited testimony from Bea about another uncle who had sexually assaulted Bea. In closing argument, appellant's counsel suggested that appellant was a father figure, and that the real aggressor was Bea's other uncle.

The jury found appellant guilty and assessed punishment at 25 years' confinement. This appeal followed.

## II. ISSUES AND ANALYSIS

In his first issue on appeal appellant asserts the trial court abused its discretion in admitting evidence of a 1987 attempted-sexual-assault offense. Appellant asserts (1) the 1987 order was not linked to appellant by sufficient proof, and (2) the probative value was substantially outweighed by the danger of unfair prejudice. In his second issue appellant asserts his trial counsel failed to render effective assistance. We address the issues in reverse order.

### A. Do the alleged failures of appellant's counsel constitute ineffective assistance of counsel?

Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. art. 1.051 (West, Westlaw through 2017 1st C.S.). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To prove ineffective assistance of counsel, appellant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland*, 466 U.S. at 688–92. Moreover, appellant bears the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). An ineffective-assistance claim must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012).

At trial, the trial court admitted into evidence State's Exhibit 25, a document

entitled, "Probation Order and Deferment of Adjudication of Guilt," indicating that a man named Adolph Rodriguez pled "guilty" to the offense of "attempted sexual assault" in 1987. The court held a hearing outside the presence of the jury to consider the admissibility of the document. Appellant argued that the exhibit was irrelevant, unfairly prejudicial under Texas Rule of Evidence 403, and that the State had not sufficiently shown that appellant was the "Adolph Rodriguez" referenced in the document. Appellant did not object that the evidence fell outside the scope of article 38.37 of the Texas Code of Criminal Procedure, or provide any proof that the complainant in the 1987 offense was not a child. *See* Tex. Code Crim. Proc. art. 38.37 (West, Westlaw through 2017 1st C.S.). The trial court admitted the document into evidence. During trial, Pete Galvan, a deputy with the Harris County Sheriff's Office testified that the name, date of birth, and SPN (system person number) in Exhibit 25 matched appellant's name, date of birth, and SPN. Appellant's counsel also cross-examined Galvan, pointing out the lack of any testimony that the thumbprint in the 1987 order is appellant's thumbprint and that Galvan, having not begun his career at the Harris County Sheriff's Office until 1991, could not identify appellant based on any personal recollection.

The court provided a limiting instruction pertaining to Exhibit 25—that the jury could not consider it as evidence unless the jury found beyond a reasonable doubt that appellant had committed the extraneous offense. If so, the court instructed the jury to consider the extraneous offense only with respect to its bearing on relevant matters, which the court said included the character of the appellant and acts performed in conformity with the character of appellant. A similar instruction appeared in the jury charge.

## 1. Failure to object to the 1987 order deferring adjudication as inadmissible under Texas Code of Criminal Procedure article 38.37

Appellant argues that his trial counsel rendered ineffective assistance by

failing to object to the 1987 order on the grounds that article 38.37, section 2(b) does not apply to this offense because it is an attempted sexual assault against a complainant who was an adult. In his brief, appellant argues that "there was not a plausible reason for counsel's failure to familiarize himself with the statute and object to the admission of a prior judgment for attempted sexual assault since it is not included as one of the exceptions to the bar against extraneous evidence."

We accept, as appellant asserts, that article 38.37, section 2(b) does not apply to an "attempted sexual assault against an adult." But the 1987 order at issue does not recite that the offense was committed *against an adult*. It simply describes the offense as "attempted sexual assault." Penal code section 22.011, "Sexual Assault," includes provisions relating to sexual assaults of adults and children. *See* Tex. Penal Code Ann. § 22.011. We presume, without deciding, that the failure of a defendant's counsel to object that article 38.37, section 2(b) does not apply to an extraneous offense because the complainant was not a child constitutes conduct "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Under this presumption, the silence of the record regarding the trial strategy of appellant's trial counsel does not preclude appellant from showing that his trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms. *See id*.

Neither Exhibit 25 nor any other part of the record contains any information about the complainant or the complainant's age in the 1987 case. The record holds no proof that the 1987 attempted sexual assault was not an attempted sexual assault of a child. Appellant's argument may have been inspired by the prosecutor's comments in closing arguments that the complainant in the 1987 case was an adult at the time; but there is no evidence—only suggestions of counsel—that the

complainant was an adult. In the absence of proof, the record does not affirmatively demonstrate a meritorious outside-the-scope argument to the application of article 38.37. *Thacker v. State*, 999 S.W.2d 56, 67 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (stating "[t]rial counsel is not ineffective for failure to make meritless objections"); *Riles v. State*, 595 S.W.2d 858, 861 (Tex. Crim. App. 1980) (indicating that the failure to make a meritless objection does not render counsel ineffective). Appellant's appellate argument that his trial counsel should have lodged this outside-the-scope objection on his behalf affords no basis for appellate relief. Finding that appellant has not satisfied *Strickland's* first-prong, we overrule this facet of his ineffective-assistance claim. *See id.* Presuming for the sake of argument that counsel was deficient, we also find for reasons discussed in Section II.B, below, that appellant has failed to satisfy *Strickland's* second prong.

## 2. Failure to object to allegedly deficient notice of outcry-witness testimony

Appellant also argues that his trial counsel rendered ineffective assistance by failing to object to "the State's failure to provide notice of the outcry witnesses' testimony, and . . . to articulate any substantial reasons at trial regarding harm suffered from lack of notice." Appellant's argument presupposes the non-existence of papers included in the supplemental clerk's record, including the State's "Notice of Intention to Use Child Abuse Victim's Hearsay Statement," filed on October 17, 2016. Appellant did not file a reply brief, and appellant has not otherwise attempted to explain this contention in light of the supplemental record. Because the record indicates that the State provided proper notice of the outcry witness testimony, any objection that the State failed to provide notice would have been meritless and could not serve as the basis for a valid ineffective-assistance-of-counsel claim. *See Thacker v. State*, 999 S.W.2d 56, 67 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Therefore, we conclude that

8

appellant has not satisfied the first-prong of *Strickland* on his ineffective-assistance complaint related to the failure to object to the alleged lack of notice of outcry witness testimony, and we overrule this complaint.

**B.    Did the trial court reversibly err when it admitted evidence of the 1987 extraneous offense over appellant's linking objection and Rule 403 objection?**

In his first issue appellant asserts the trial court abused its discretion in admitting evidence of the 1987 extraneous offense because (1) the 1987 order deferring adjudication was not linked to appellant by sufficient proof, and (2) the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. We presume, without deciding, that the trial court erred in overruling the objections by which appellant preserved error as to these two complaints, and we consider whether the error was harmful.

Under this presumption, we must decide whether the error affected appellant's substantial rights to a fair trial. *See* Tex. R. App. P. 44.2(b); *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010); *Torres v. State*, 424 S.W.3d 245, 260 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Id*. But, if the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, we must deem this non-constitutional error harmless. *Id*. In performing a harm analysis, we examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence. *Id*. We consider overwhelming evidence supporting the particular issue to which the erroneously admitted evidence was directed, but that is only one factor in our harm analysis. *Id*. We assess harm after reviewing the record, and the burden to show harm rests on

neither the appellant nor the State. *Id*. In conducting our harm analysis we consider the arguments appellant has lodged against a harmless-error finding.

By characterizing the State's other proof against him as lacking physical evidence and consisting only of Bea's allegations and "other witnesses['] recitation of her allegations," appellant argues that the extraneous offense had a "tremendous influence upon the jury." Appellant's characterization of the testimony of the State's other witnesses falls short and reveals inaccuracies. In particular, the forensic interviewer, who testified that she has conducted thousands of interviews of witnesses and victims in cases involving sexual abuse, noted that Bea was able to provide sensory details about the assaults, that Bea exhibited signs that she could recall from memory (rather than from script), and that Bea corrected the interviewer at instances in the interview. Though appellant asserts the evidence had "tremendous influence," when considered in the context of the entire record, we conclude that any influence of the extraneous offense was minor. The testimony in issue comprises about 20 of the 430 pages of trial testimony, less than five percent. Neither party devoted more than a tenth of closing argument to address the issue. Moreover, any influence of the extraneous offense was mitigated by appellant's counsel's cross-examination of the sponsoring witness, which provided the jurors reasons to doubt whether appellant had committed the prior offense and called into question its relevance to the charged offense. Also, in the limiting instruction given during trial and inserted into the jury charge, the trial court instructed the jury not to consider the extraneous offense referred to in Exhibit 25 unless they were satisfied beyond a reasonable doubt that appellant had committed the offense.

Appellant also argues that the error allowed the State to characterize him as "a sexual predator," specifically pointing to the prosecutor's remarks in closing

argument that "the same man who would attempt to sexually assault an adult is the same man with the same character to have abused a child in secret for years." Though the admission of the evidence allowed the State to characterize appellant as a sexual predator, the State did not characterize him as a sexual predator *of children*.  In any event, appellant's argument touches upon our own noted concern about "the character of the alleged error and how it might be considered in connection with other evidence in the case." *Sauceda v. State*, 162 S.W.3d 591, 597 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).   In *Webb* we found that "striking similarities" between the charged offense and the extraneous acts factored in favor of finding harm resulting from the erroneous admission of evidence of these acts.  *Webb v. State*, 36 S.W.3d 164, 183–84 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).  In that case the jury was presented evidence of the charged offense bolstered by the vivid testimony of a similar victim of a similar sexual assault by the same defendant, prompting this court to have "grave doubts" that the trial court's error in allowing evidence of the extraneous offense did not affect the outcome.  *See id.*  The facts in today's case differ materially from the facts in *Webb*.  Even presuming the jury found beyond a reasonable doubt that appellant committed the extraneous offense of attempted sexual assault in 1987, unlike the vivid detail provided in *Webb*, the evidence of the 1987 offense was minimal and lacking in details or descriptive testimony showing a strong similarity to any of the five offenses shown in the State's evidence.

Appellant also contends that the jury's request to view Exhibit 25 during deliberations provides proof of the document's influence. The record does not reflect why the jury asked to see Exhibit 25.  Without any evidence as to why the jury wanted to review this exhibit, it would be speculative to conclude that because the jury requested to view the evidence, the evidence misled the jury. *See Austin v.*

11

*State*, 222 S.W.3d 801, 813 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) ("Even though the jury requested to view the entire psychological evaluation file during deliberations, given the small role this evidence played in the trial, especially in relation to the other evidence supporting the verdict, we conclude the evidence did not influence the jury or had only a slight effect.")

At the evidentiary hearing during trial, appellant's counsel had characterized the State as having put forward "more than enough probative evidence to prove their case." Appellant now states on appeal that Exhibit 25 was "inherently inflammatory in a case where the evidence was rooted in the word of the child against Appellant's, because in this case there were no eye witnesses to the abuse, no physical evidence, and no physical injuries to the child." We agree that a conviction of a prior sexual offense has the potential to inflame, but appellant misjudges the weight on both sides of the scale. On one side of the scale, any influential weight that the extraneous attempted sexual assault could have, was diminished by ambiguity surrounding the offense, the lack of any supporting testimony about it, the low level of punishment for the 1987 offense, the remoteness in time of the offense, and the limiting instructions. As to the other side of the scale, there was overwhelming proof of guilt—the State presented testimonial accounts of five aggravated sexual assaults when it needed to prove only two acts constituting the offense of aggravated sexual assault. *See Torres v. State*, 424 S.W.3d 245, 253 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (stating "the testimony of a child complainant, standing alone, is sufficient to support a conviction for sexual assault").

The Second Court of Appeals provides a useful comparison. *See Martin v. State*, 176 S.W.3d 887, 98 (Tex. App.—Fort Worth 2005, no pet.). That court held that a trial court erred in admitting evidence of the aggravated sexual assault of a

young girl (penetration of the complainant's sexual organ with the defendant's sexual organ) over a Rule 403 objection in a case in which the extraneous acts were equal to or likely more heinous than the charged offense involving oral sex and improper touching of a minor. *Id*. at 98. The *Martin* court considered that the State had little or no need for the evidence to prove the intent element and found that the evidence of the aggravated sexual assault had significant potential to impress the jury "in some irrational but nevertheless indelible way" and potentially caused the jury to reach a decision on an improper basis. *Id*. Despite finding error, the *Martin* court found the admission of the extraneous evidence harmless. *Id*. at 898. The court considered the overwhelming evidence of guilt, and noted that the complainant's testimony regarding the separate and distinct acts charged sufficed to support the jury's verdict. *Id*. at 897-98. The court also noted the trial court's use of limiting instructions, and that the appellant in *Martin* had not rebutted the presumption that the jury had followed those instructions. *Id*.

Like the complainant in *Martin*, Bea provided significant details about multiple instances of appellant's sexual conduct. Bea recalled four occurrences during the time frame she was in the fifth and sixth grades; she provided vivid details about each occurrence, pinpointing the place each act occurred, and for each event identifying a different room, piece of furniture, a description of the sexual contact and her position with respect to appellant, as well as sensory details about appellant and the surroundings. Similar to the jury in *Martin*, the jury in today's case heard evidence of an extraneous offense. As in *Martin*, the overwhelming evidence of guilt dwarfed the extraneous acts. And, as in *Martin*, the trial court gave the jury limiting instructions and appellant failed to rebut the presumption that the jury followed those instructions.

The record does not raise legitimate reasons to doubt the evidence.

13

Appellant's one witness, his adult niece, did not establish an alibi as to any of the aggravated sexual assaults proven in the State's case-in-chief.

After examining the entire trial record under the applicable standard of review, we conclude that if the trial court erred in admitting evidence of the 1987 extraneous offense, the overwhelming evidence of guilt, the lack of any significant similarity of the extraneous evidence, and the small role the extraneous offense evidence played at trial render the error harmless. *See id*.; *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002) (addressing the rule that overwhelming evidence of guilt may be used as a factor to be considered under a harm analysis for constitutional error not affecting substantial rights). Accordingly, we overrule appellant's first issue.

### III. CONCLUSION

Any error in admitting the exhibit containing evidence of a thirty-year old offense was harmless. Because the record does not contain the age of the complainant in the 1987 extraneous offense or whether the offense was one against a child, we cannot conclude that appellant's counsel failed to make a meritorious objection to the admission of evidence of the offense on the ground that article 38.37, section 2(b) does not apply to this offense because it is an attempted sexual assault against a complainant who was an adult. Therefore, appellant's ineffective-assistance claim fails. Having overruled all of appellant's challenges, we affirm the trial court's judgment.

/s/ Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Christopher and Jamison.
Do Not Publish — TEX. R. APP. P. 47.2(b).

14