**Affirmed and Memorandum Opinion filed November 3, 2022.**



In The

# Fourteenth Court of Appeals

## NO. 14-21-00465-CR
## NO. 14-21-00466-CR

**WILBER CURTIS JOHNSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 179th District Court
Harris County, Texas
Trial Court Cause Nos. 1502233 & 1502234**

## MEMORANDUM OPINION

In these appeals from two separate convictions for aggravated sexual assault, appellant argues in multiple issues that the evidence is insufficient to support his convictions, that the trial court reversibly erred by admitting certain evidence, and that his counsel was ineffective. For the reasons given below, we overrule all of appellant's arguments and affirm the trial court's judgments.

## BACKGROUND

Appellant was charged in two separate indictments with sexually assaulting the complainant, his girlfriend's three-year-old daughter. One indictment alleged that he digitally penetrated the complainant's vagina, and the other indictment alleged that he caused her vagina to contact his mouth.

Appellant pleaded not guilty to both charges, and his case proceeded to a nonjury trial, where testimony was heard from the complainant, an outcry witness, and various other familial and professional caregivers. Based on that testimony, the trial court convicted appellant of both charges and sentenced him to concurrent terms of twenty-five years' imprisonment.

## SUFFICIENCY OF THE EVIDENCE

In a sufficiency challenge, a reviewing court must determine whether a rational trier of fact could have found the essential elements of an offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). The offense here was aggravated sexual assault, and appellant was charged with it twice. To obtain a conviction on the first charge, the prosecution was required to prove beyond a reasonable doubt that the complainant was younger than fourteen years of age and that appellant intentionally or knowingly caused the penetration of her vagina with his finger. *See* Tex. Penal Code § 22.021(a)(1)(B)(i), (a)(2)(B). To obtain a conviction on the second charge, the prosecution was required to prove beyond a reasonable doubt that the complainant was younger than fourteen years of age and that appellant caused her vagina to contact his mouth. *See* Tex. Penal Code § 22.021(a)(1)(B)(iii), (a)(2)(B).

When deciding whether the prosecution satisfied its burden of proof as to both of these charges, we examine all of the evidence in the light most favorable to the

verdict. *See Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). Under this standard of review, we have no power to reevaluate the weight and credibility of the evidence, or to substitute our judgment for that of the factfinder. *Id.* Quite the opposite, we must honor all findings that are supported by the evidence and by any reasonable inferences that can be drawn from the evidence. *Id.* If the record reveals any conflicts in the evidence, we must presume that the factfinder resolved the conflicts in favor of the judgment that was actually rendered. *Id.*

The testimony of the outcry witness was sufficient by itself to support both of appellant's convictions. According to the outcry witness, who was the complainant's step-grandmother, the complainant disclosed that appellant had put two of his fingers in her "tu-tu"—which was her euphemism for vagina—and that appellant had also used his tongue to lick her "tu-tu." The outcry witness testified that these sexual assaults occurred when the complainant was three years old, as she was naked and taking a bath. A reasonable factfinder could have inferred from this testimony and from the surrounding circumstances that the assaults were intentional or knowing, and thus, that the prosecution had proven every essential element of both offenses beyond a reasonable doubt. *See Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991) (testimony from the outcry witness was sufficient to support the conviction).

Appellant counters that the evidence is insufficient as to the first charge because there was no physical evidence of a sexual assault. Appellant seems to be invoking the testimony of a nurse, who said that she examined the complainant on the day after the alleged assault and found no signs of trauma or injury. Appellant's argument is unpersuasive because the nurse testified that an assault can occur even without such evidence of trauma or injury. More importantly, there was affirmative testimony from the outcry witness that appellant had digitally penetrated the

complainant, and under our standard of review, we must credit that testimony in this sufficiency review.

Appellant also counters that the evidence is insufficient as to the second charge because the complainant testified that no one has ever put his mouth on her private parts. But this argument merely highlights a conflict in the evidence, which we presume that the finder of fact resolved in favor of the verdict. The factfinder may have reasonably determined that the complainant's memory was faulty—she was nine years old at the time of trial and testifying about events that had occurred when she was three—or perhaps that the complainant was too embarrassed to discuss all of the details surrounding the assault. In any event, there was affirmative evidence from the outcry witness that appellant licked the complainant's vagina, and the trial court was free to credit that evidence over the complainant's contrary testimony.

For the foregoing reasons, we conclude that the evidence was sufficient to support both convictions.

## THE COMPETENCY OF THE COMPLAINANT

Before any substantive testimony was heard, the defense received a *Brady* disclosure, which stated that the complainant had no memory of the second alleged assault involving oral contact. Based in part on that disclosure, the defense requested the trial court to conduct a competency hearing. The defense asserted that if the complainant was not competent, then she was not "available" to testify, as required by the statute for outcry witnesses, which would also mean that the testimony of both the complainant and the outcry witness would need to be excluded.

The trial court conducted the requested hearing and determined that the complainant was competent. Appellant now challenges that ruling, which we review

4

for an abuse of discretion. *See Broussard v. State*, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995).

A child is presumed to be competent unless the trial court determines that she "lacks sufficient intellect to testify concerning the matters in issue." *See* Tex. R. Evid. 601(a)(2). When deciding whether the child possesses such intellect, the trial court should consider the following factors: (1) whether the child had the ability to intelligently observe the events in question at the time of the occurrence, (2) whether she has the capacity to recollect the events, and (3) whether she has the capacity to narrate the events. *See Torres v. State*, 424 S.W.3d 245, 254 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). The final factor encompasses the child's ability to understand the moral responsibility of telling the truth, her ability to understand the questions posed, and her ability to frame intelligent answers. *Id.*

The complainant testified during the competency hearing that she understood the importance of telling the truth. She demonstrated the difference between a truth and a lie, and she promised to tell the truth. She also identified the private parts of her body, and she testified that someone had touched her in those places in a manner that she did not like. She did not name the person who touched her, but she identified him as the father of her siblings—i.e., appellant—and she narrated both how the touching occurred and how she reacted to it. Based on the entirety of this testimony, we conclude that the trial court did not abuse its discretion by determining that the complainant was competent to testify. *See Dufrene v. State*, 853 S.W.2d 86, 88–89 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (upholding a competency determination where the record showed that the child could understand the difference between a truth and a lie, the child could identify body parts on a doll, and the child could describe the circumstances of her rapes).

Appellant argues that the trial court should have made the opposite determination because the complainant could not recollect her earlier statement that appellant had caused her vagina to contact his mouth. This argument mirrors appellant's sufficiency challenge, and it fails for the same reason: a conflict in the evidence does not establish that the trial court made the wrong determination. *Id.* at 89 ("Although her testimony does contain conflicting and sometimes confusing answers, that does not, in itself, make her an incompetent witness.").

## THE PSYCHOLOGIST'S TESTIMONY

Shortly after her outcry, the complainant was referred to a psychologist for therapy. Because of the complainant's tender age, the psychologist engaged in play therapy, which allowed the complainant to use toys as a means of expressing herself. According to the psychologist, these therapy sessions were governed by a ground rule: the complainant could say or do anything, provided that no one was hurt. During one such session, the complainant mentioned that she had been sexually abused.

The defense lodged a hearsay objection before the psychologist could testify in detail about the complainant's statements. In addition to that hearsay objection, the defense argued that the complainant's statements were not admissible because the psychologist had not established during the therapy session that the complainant understood the difference between a truth and a lie.

The prosecution made a proffer of the statements and argued that they were admissible because they were made for the purpose of diagnosis or treatment. The prosecution also asserted that the admissibility of the complainant's statements did not depend on her understanding of the difference between a truth and a lie.

The trial court ruled that the statements were admissible insofar as the complainant stated that she had been sexually abused. However, the trial court ruled that the psychologist could not reveal whom the complainant had identified as her abuser. Appellant now challenges the trial court's decision to admit the redacted statements.

For the sake of argument only, we will assume without deciding that the trial court's ruling was erroneous and proceed to a harm analysis under the standard for nonconstitutional error. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (the erroneous admission of hearsay is reviewed for harm under the standard for nonconstitutional error).

Nonconstitutional error must be disregarded unless it affects a defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). An error affects a defendant's substantial rights when the error has a substantial and injurious effect or influence on the factfinder's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). The erroneous admission of evidence generally does not have a substantial and injurious effect or influence on the factfinder's verdict if the same or similar evidence is properly admitted elsewhere during the trial. *See Linney v. State*, 401 S.W.3d 764, 780 (Tex. App.—Houston [14th Dist.] 2013), *pet. ref'd*, 413 S.W.3d 766 (Tex. Crim. App. 2013).

According to the psychologist, the complainant disclosed that her abuser made "vaginal penetration with his hand." Consistent with the trial court's ruling, the psychologist did not identify the abuser by name.

The psychologist's testimony tracked the testimony of the complainant, who not only talked about vaginal penetration, but who also identified appellant as her abuser. More specifically, the complainant testified that appellant had touched her in her private part where her "pee comes out."

7

The psychologist's testimony also tracked the testimony of the outcry witness, who testified that the complainant claimed to have been digitally penetrated by appellant.

Because the testimony from both the complainant and the outcry witness was properly admitted, similar to the psychologist's testimony, and more directly inculpated appellant than the psychologist's testimony, we conclude that any improper admission of the psychologist's testimony could not have had a substantial or injurious effect or influence on the factfinder's verdict. At most, the psychologist's testimony had only a slight effect. Thus, any error in the admission of that testimony was harmless. *See Nino v. State*, 223 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (the improper admission of testimony from a forensic interviewer was harmless because the same or similar testimony was properly admitted by the child complainant's mother).

## THE HOSPITAL RECORDS

When the prosecution offered into evidence a copy of the complainant's hospital records, the defense objected on multiple grounds, including one ground that the records were not properly authenticated because a business records affidavit had not been filed with the court at least fourteen days before trial. The prosecution responded that the affidavit did not have to be filed with the court. The prosecution also asserted that the defense had received notice of the records and affidavit because they had all been uploaded to a portal roughly two months before the start of trial. The defense replied that notice through the portal was not sufficient because the applicable rules required service. The trial court overruled the defense's objection, and appellant now challenges that ruling.

Business records accompanied by an affidavit are self-authenticating when served in accordance with Rule 21a of the Texas Rules of Civil Procedure. *See* Tex.

8

R. Evid. 902(10). As he argued in the trial court below, appellant argues in this court that uploading documents to a portal does not qualify as service under Rule 21a.

For the sake of argument only, we will assume without deciding that appellant is correct and that the prosecution, as the proponent of the evidence, did not comply with the applicable rules. The question then becomes whether any error in the admission of the records was harmful under the standard for nonconstitutional error, or whether the error was harmless and must be disregarded. *See* Tex. R. App. 44.2(b).

When substantively admissible evidence is improperly admitted because of the proponent's failure to comply with a notice provision, the determination of harm depends on whether the opponent of the evidence was surprised by the evidence. *See Hernandez v. State*, 176 S.W.3d 821, 825 (Tex. Crim. App. 2005).

In this case, the trial court specifically asked defense counsel when she became aware of the affidavit. Her response was, "The business records? They were posted on the portal when it was represented; that's correct. But I was not anticipating them being self-authenticating." The trial court then requested the date of the posting, and upon being advised that it was two months earlier, the trial court overruled the objection.

The trial court had a substantial basis for believing that the defense had not been surprised by the evidence. The defense did not claim surprise, either in the trial court or in this court. Nor did the defense ever claim that the records were not what they were represented to be. On this record, we cannot say that any error in the admission of the records was harmful.

# THE FATHER'S STATEMENTS

The hospital records, which we just addressed in the previous section of this opinion, contained a narrative history from a sexual assault nurse examiner, and that history included hearsay statements from the complainant's father. The defense objected to the hearsay and argued that the father's statements were not admissible under the exception for statements made for the purpose of diagnosis or treatment. The trial court sustained the objection in part, overruled it in part, and admitted the records with a partial redaction of the father's statements.

Appellant now challenges the trial court's decision to admit the redacted records. He emphasizes evidence that the father had made an earlier trip to the hospital, but that after speaking with a police officer he was encouraged to return to the hospital for a second time, which is when the records at issue were created. Appellant believes that this sequence of events establishes that the father's statements were made in anticipation of prosecution, and not for the purpose of diagnosis or treatment.

For the sake of argument only, we will assume without deciding that the records should have been excluded and that the trial court erred by admitting them. The question then becomes whether the records resulted in harm under the standard for nonconstitutional error.

We reproduce the records here in their original and unedited form, except where noted by brackets:

> History: 3yr old brought to the EC by father for SAE. I spoke with dad and [the complainant's] step grandmother [name redacted by court of appeals]. Dad, [name redacted by court of appeals], stated [redacted by trial court] Sunday (10/4/15) [redacted by trial court]. At 8:00pm the dad came home and gave [the complainant] a bath. During the bath [the complainant] stated to dad "[Appellant] has to go" "he plays with my

"tutu". Dad stated that [the complainant] calls her vagina "tutu". [Redacted by trial court]. [The complainant] stated "granny, he opened my leg and put 2 fingers in my "tutu" and he played with my ass"

DID SHE SAY THE EXACT WORDS "ASS"? "yes, she said ass. She also told me that he licked her tutu and put his tongue in her ass"

WHO IS [Appellant]? "[Appellant] is her mothers boyfriend"

WHEN WAS THE LAST TIME SHE WAS IN CONTACT WITH [Appellant]? "he was at the mothers house when I picked her up on Sunday but I don't know when the last time she was alone with him"

DOES SHE HAVE ANY PAIN? "no"

HAS SHE HAD A BOWEL MOVEMENT SINCE Sunday? "Yes. She said her butt hurts but her bowel movement was hard pellets"

The material portions of the father's statements were duplicative of the testimony from the step-grandmother, who was the outcry witness. Both the father and the outcry witness indicated that the complainant had reported an instance of digital penetration and of oral-vaginal contact. There is no basis for concluding that the finder of fact believed the medical records but disbelieved the outcry witness, who was also named as a source in the records. Because the testimony of the outcry witness was properly admitted, we conclude that any improper admission of the father's hearsay statements had no influence, or at most a slight effect, on the factfinder's judgment. Accordingly, an error in the admission of those statements was harmless and must be disregarded. *See* Tex. R. App. P. 44.2(b).

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his final issue, appellant asserts multiple claims of ineffective assistance of counsel. We review such claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that standard, appellant must prove by a preponderance of the evidence that his counsel's performance was deficient, and that the deficient performance was so prejudicial that it deprived him of a fair trial. *Id.* at

11

687. To establish deficient performance, appellant must show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. And to establish prejudice, appellant must show a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694. Failure to make the required showing of either deficient performance or prejudice defeats the claim of ineffectiveness. *Id.* at 697.

***Lesser-Included Offense.*** Just before closing arguments, the prosecution requested the trial court to consider the lesser-included offense of indecency with a child. Defense counsel objected to the requested submission, arguing that there was no evidence to support it. The trial court sustained the objection and declined to consider the lesser-included offense. Appellant now argues that counsel was ineffective for objecting to the requested submission. Without commenting on whether the evidence was sufficient to support the submission, appellant argues that counsel should not have objected because the maximum punishment for the lesser-included offense is only twenty years' imprisonment, which means that a conviction for that offense would have resulted in a shorter sentence.

When assessing counsel's performance, our review is highly deferential and begins with the strong presumption that counsel's decisions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). The effect of this presumption is that we cannot ordinarily conclude that counsel's performance was deficient on a silent record. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Counsel must usually be given an opportunity to explain his actions and omissions before he is condemned by a court for being unprofessional or incompetent. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

In this case, counsel had an opportunity to explain his decisions. Appellant filed a motion for new trial that raised a claim of ineffective assistance, and counsel responded to that claim in an affidavit. However, the claim in appellant's motion focused on counsel's failure to interview certain persons (as well as other alleged failures by another lawyer who withdrew from the case). The claim did not focus on the prosecution's requested submission of a lesser-included offense, and counsel did not otherwise address his strategy with regards to the lesser-included offense in his affidavit. Also, counsel did not testify at the hearing on the motion for new trial, nor was the lesser-included offense otherwise discussed. Accordingly, the record is completely silent as to counsel's strategy in opposing the lesser-included offense.

When the record is silent, we will not conclude that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). This is a difficult standard, and we cannot say that counsel's decision rises to that level. Counsel may have strategically opposed the submission of a lesser-included offense if counsel reasonably believed that the finder of fact would have acquitted on the greater offense. *See Ex parte White*, 160 S.W.3d 46, 55 (Tex. Crim. App. 2004) (holding that counsel was not ineffective for adopting an all-or-nothing approach and for refusing to request a lesser-included offense). Accordingly, we conclude that appellant has failed to rebut the strong presumption that counsel's decision was objectively reasonable.

***Outcry Witness.*** The complainant—who did not testify during the outcry hearing—testified that her mother was the first person she had told about her allegations of sexual abuse. Based on that testimony, appellant claims that counsel was ineffective because counsel did not question the mother—who testified *before* the complainant—as to whether she was the proper outcry witness.

13

Appellant did not assert this claim of ineffectiveness in his motion for new trial, and the record is silent as to counsel's reasons for not questioning the mother about her potential for being an outcry witness. Thus, there is nothing in the record to rebut the presumption that counsel's performance was reasonable.

But even if we assumed for the sake of argument that counsel's performance had been deficient, appellant has not established any reasonable probability that the outcome of the proceedings would have been different. Appellant did not develop any evidence directly from the mother as to how she would have testified, or whether her testimony would have differed from the step-grandmother, who testified as the outcry witness. Without any showing that the testimony would have been different, appellant has not demonstrated that he suffered any prejudice.

***The Mother's Former Boyfriend.*** Appellant's original lawyer hired an investigator to interview multiple witnesses, but the witnesses whom he interviewed did not include an earlier boyfriend of the complainant's mother, who was allegedly a registered sex offender. Appellant alluded to the boyfriend in his motion for new trial, where he claimed that his entire legal team was ineffective for not conducting a better investigation.

Appellant's original lawyer filed an affidavit. Although the original lawyer did not refer to the boyfriend by name, the original lawyer attested that appellant had never mentioned that anyone else may have committed the crimes against the complainant.

One of appellant's trial attorneys also filed an affidavit. She referred to the boyfriend by name as someone she had hoped to interview. She believed that the boyfriend may have provided support for an alternate suspect theory, but she attested that she was unable to interview the boyfriend due to the passage of time.

14

By denying the motion for new trial, the trial court rejected appellant's claim that his legal team had been ineffective. Appellant now challenges that ruling, which we review for an abuse of discretion. *See Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012), *overruled on other grounds by Miller v. State*, 548 S.W.3d 497 (Tex. Crim. App. 2018).

The trial court may have reasonably rejected appellant's claim because he did not produce any evidence that the boyfriend was available to testify, or that information related to the boyfriend would have been beneficial to the defense. Appellant even concedes in his appellate brief that "there is no way of knowing what counsel would have learned had they located" the boyfriend. Thus, the trial court could have reasonably determined that appellant failed to satisfy his burden of showing that he was prejudiced. *See Jones v. State*, 500 S.W.3d 106, 116 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (holding that the defendant failed to establish that his counsel was ineffective by not engaging an expert witness because the defendant produced no evidence showing that an expert was available and that an expert could have offered beneficial testimony).

***The Delay in Going to Trial.*** Appellant claimed in his motion for new trial that his original lawyer was ineffective because he had too many clients and he was not giving enough attention to appellant's particular case. Appellant pointed out that he had filed pro se motions for a speedy trial, but that the original lawyer had agreed instead to several case resets. Appellant suggested that he was prejudiced because several witnesses could not be located by the time his case finally went to trial.

The original lawyer controverted appellant's claim, writing in his affidavit that "the resets were at [appellant's] request because he did not want to go to trial." The trial court did not abuse its discretion by crediting this affidavit testimony when it denied appellant's motion for new trial. *See McFarland v. State*, 845 S.W.2d 824,

15

848–49 (Tex. Crim. App. 1992) (holding that a defendant could not claim that his counsel was ineffective by taking a course of action that the defendant specifically requested), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994); *see also Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013) (recognizing that trial courts have wide discretion in assessing the credibility of affidavits).

Appellant also suggested in his motion for new trial that his trial lawyers had been ineffective by delaying the trial. But appellant's lead counsel addressed this claim in his affidavit too. He attested that he was appointed in 2019, before the COVID-19 pandemic; that he tried to negotiate a plea with the prosecution, which appellant rejected; and that he requested a jury trial ninety-eight days into his representation. He also stated that the pandemic forced the delay of trial for an additional eighteen months. Based on this evidence, the trial court could have reasonably concluded that counsel's performance had not been deficient.

***Cumulative Effect.*** Appellant lastly argues that he was prejudiced by the cumulative effect of his lawyers' errors. We disagree.

Appellant did not establish any error with respect to his trial counsel's decision to object to the lesser-included offense. And as just discussed, the trial court was free to believe that appellant showed no error on his claim that his legal team failed to bring his case to a trial at an earlier date.

That only leaves appellant's claims that counsel failed to question the complainant's mother about her potential for being an outcry witness and the complainant's former boyfriend about his potential for being an alternate suspect. There was no cumulative effect from any errors arising out of these claims. As explained above, the factfinder heard the outcry statements from the complainant's step-grandmother. There was no showing that the factfinder's decision would have

16

been different if the outcry statements had come from the complainant's mother instead. And the claim about the boyfriend was entirely speculative. There was no showing that appellant would have benefited from an investigation into the boyfriend.

The record here contrasts sharply with the record in *Ex parte Aguilar*, No. AP-75,526, 2007 WL 3208751 (Tex. Crim. App. Oct. 31, 2007) (not designated for publication), the only case appellant has cited in support of his argument for cumulative error. *Aguilar* was a murder case, and the conviction there was "weakly supported" by circumstantial evidence, *id.* at *4, unlike here, where there was direct evidence of appellant's guilt. Also, counsel in that murder case was deficient in multiple ways, such as: by opening the door to evidence of the defendant's extraneous misconduct; by eliciting irrelevant testimony of the defendant's prior drug use; by failing to object to testimony that the defendant had killed a rabbit; by failing to object to testimony that the defendant was dishonest; by failing to object to an improper argument from his co-defendant's counsel that he believed the defendant was a liar; and by failing to request limiting instruments to the evidence of extraneous misconduct. *Id.* at *5–14. The Court of Criminal Appeals determined that the consequences of these errors "permeated the entire trial." *Id.* at *15.

The same cannot be said about any errors here. If, as appellant claims, his counsel had been more diligent about determining the proper outcry witness, then the outcry statements still would have been introduced. The only difference would have been the sponsoring witness. And as for the other claim, even if counsel had been more diligent in investigating the mother's former boyfriend, there was still no evidence that the investigation would have been beneficial to the defense.

For all of these reasons, we cannot say that the consequences of any errors "permeated" appellant's entire trial, and we overrule his claims of ineffectiveness.

17

## CONCLUSION

The trial court's judgments are affirmed.

/s/    Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan.

Do Not Publish — Tex. R. App. P. 47.2(b).