**Affirmed and Memorandum Opinion filed April 25, 2023.**



In The

# Fourteenth Court of Appeals

**NO. 14-22-00058-CR**
**NO. 14-22-00059-CR**

**MANUEL F. CARRILLO JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1653138 and 1653139**

## MEMORANDUM OPINION

A jury found appellant guilty of two counts of continuous sexual abuse of a child. The trial court assessed punishment at thirty-five years' confinement for each count to run concurrently. In two issues, appellant complains about the admission of testimony from outcry witnesses. We affirm.

# I. OUTCRY WITNESS: EXTRANEOUS OFFENSES

In his first issue, appellant contends that the trial court erred by allowing a witness to testify about outcry statements from a child, L.C., who was not a complainant. The State agrees that the outcry statute, Article 38.072 of the Code of Criminal Procedure, does not provide a hearsay exception for outcry testimony related to an extraneous offense committed against a child who is not the complainant. *See* Tex. Code Crim. Proc. art. 38.072, § 2(a)(1) (providing for the admissibility of hearsay by a child who describes (A) "the alleged offense," or (B) during the punishment phase, a crime, wrong, or act other than the alleged offense). But the State contends that appellant failed to preserve error and that any error was harmless. Assuming without deciding that error was preserved,[1] we agree with the State that it was harmless.

## A. Background

Appellant was charged with the continuous sexual abuse of two sisters—his girlfriend's daughters—occurring over the summer of 2018 when the children, A.O and L.O., were ten and six years' old, respectively. Regarding the abuse of these children, the jury heard testimony from their grandmother (an outcry witness), their mother, their therapist, the children themselves, appellant, and a police

---

[1] *See Long v. State*, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990) (hearsay objection preserved complaint regarding State's failure to show admissibility under outcry-witness statute; "The burden then became the State's to show the evidence was admissible pursuant to either the provisions of Art. 38.072 or to some other exception to the hearsay rule."); *see also Beckley v. State*, 827 S.W.2d 74, 78 (Tex. App.—Fort Worth 1992, no pet.) (hearsay objection preserved complaint that outcry witness's testimony described an extraneous offense). *But see Momon v. State*, No. 14-00-00260-CR, 2001 WL 930848, at *2 (Tex. App.—Houston [14th Dist.] Aug. 16, 2001, pet. ref'd) (not designated for publication) (hearsay objection did not preserve complaint that the outcry witness's testimony described an extraneous offense (citing *Gallegos v. State*, 918 S.W.2d 50, 56 (Tex. App.—Corpus Christi–Edinburg 1996, pet. ref'd))). *See generally Zarco v. State*, 201 S.W.3d 816, 828–30 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (noting the courts of appeals' "mixed history" in applying *Long*; following *Long* as binding precedent).

investigator, among others. The jury also heard testimony from appellant's half-sister, L.C., and her mother concerning extraneous sexual offenses committed against L.C. The State designated L.C.'s mother as an outcry witness, and the trial court allowed her to testify about L.C.'s out-of-court statements.

The police investigator testified about appellant's statements while he was being interviewed. Appellant admitted to touching A.O.'s vagina and L.O.'s anus. He admitted to touching his penis to the girls' feet. He would touch the girls three to five times per week over a period of four months. He confirmed that he had a "foot fetish." He said the girls were "coming on" to him, would kiss him, get "too touchy" with him, and were "open for more."

The girls' grandmother testified about A.O.'s outcry. A.O. reported to the grandmother that appellant would have the girls go into the bedroom and lie on their sides while he lied up against their backs and rubbed his penis on their bottoms. A.O. reported appellant would fondle them on their front parts and butts. She reported that appellant would rub his penis on their feet.

A.O., who was thirteen years old at the time of trial, testified in detail about the abuse. She testified that appellant would touch her feet with his penis and touch her private parts and "bottom" while her clothes were on. She described several specific incidents, such as when appellant had her lie down next to him while on their sides and she felt his round and hard bump on her bottom. She also observed appellant rubbing his penis on L.O.'s feet. A.O. testified that while she was in therapy in the fall of 2018, she recanted the abuse. She recanted because she felt like her mother did not believe her. Her mother would ask her every week, "Are you sure this is what happened?" L.O. testified that she did not remember anything that happened between her and appellant or what she had said to an interviewer at the Children's Assessment Center.

3

The girls' therapist testified about what they said appellant had done to them, including the frequent touching of their private parts and bottoms and how he had them lie on their sides while he "humped" their bottoms. L.O. reported that appellant would suck on their toes and heels. When the girls ultimately recanted about a month into therapy, L.O. nonetheless maintained that appellant had sucked on their feet. The therapist explained that recanting usually occurs because of someone coaching or sharing their opinion that it couldn't have happened or asking "are you sure this happened" until the child starts to understand that maybe somebody doesn't want them telling. Based on the therapist's dealings with the mother, the therapist felt the mother was not supportive.

A child abuse pediatrician at the Children's Assessment Center testified about statements that the girls made during medical examinations. A.O. reported that appellant would hump her bottom and do the same to L.O. Appellant would touch their private parts and bottom with his hands over their clothes. L.O. was not able to provide the pediatrician with a lot of information but said she had "already told the other lady," which the pediatrician understood to mean a forensic interviewer at the Children's Assessment Center.

The girls' mother testified that after the girls recanted their allegations, she allowed appellant back into their home around January 2019. In February, she walked in on him standing too close to L.O. while he was massaging L.O.'s shoulders. The mother felt his penis and thought it was slightly hard. That night, appellant kept telling the mother that he "wasn't thinking clearly." After the mother kicked him out of the house, he said in text messages that L.O. was "getting too close" to him and that he "wasn't doing anything that she didn't want him to do." The mother also testified that, in her sex life with appellant, he had a

4

predilection with feet—appellant would ask her to stroke his penis with her feet, and he would rub his penis on her feet.

The State also introduced evidence of extraneous sexual abuse that appellant committed against his half-sister, L.C. In the fall of 2019, appellant began living off and on with his father and L.C., who was thirteen years old at the time. L.C.'s mother testified as an outcry witness about statements that L.C. made to her. L.C. told her mother about an incident when L.C. was in the kitchen washing dishes and appellant came up from behind her and rubbed his penis on her bottom. L.C. told her mother about another incident when L.C. was washing her clothes and appellant came up behind her and rubbed his penis on her bottom. L.C. told her mother about an incident in which L.C. was lying in bed and appellant came into her room and rubbed his penis on her feet.

L.C. also testified in detail about appellant's sexual abuse. She did not testify about any incidents involving washing dishes or clothes. But she did testify about incidents that occurred in her room and appellant's room. She testified that appellant started kissing her feet, and he put her toes inside his mouth. She saw his hands go down his front side and then felt something like skin against her feet that was hard and a cylinder. She testified about another incident when he "did the whole feet thing again" and then laid his body weight on top of her, and she felt him rubbing his cylinder between her thighs. During another incident, he pulled her onto his bed and put his cylinder between the top of her thighs. During another incident in her room, he had her lie on her bed with them on their sides while he put his hands around her. One of his hands was in her shorts, over her underwear, rubbing her private parts. When he tried to forcefully kiss her, she started crying, and he stopped. She testified that, all in all, he had touched her feet with his

5

private part more than five times and had touched his private part to her backside less than five times.

Appellant testified that the girls were lying. He testified that he admitted things to the police investigator that he didn't do because he loves A.O. and L.O. so much that he was willing to make himself look bad instead of them. He testified that A.O. and L.O. liked to be close to him a lot and always wanted to come into the bedroom with him. He testified that he didn't allow it because he felt it was inappropriate for the kids to be alone with him in the bedroom. He told the girls he was going to tell their mother about their behavior, but they made him promise not to say anything. He told them if they started behaving inappropriately again, then he would say something.

Appellant testified that it felt to him like all three of the girls were sexually attracted to him and sexually coming on to him. He testified that L.C. was being sexually aggressive toward him and her motive for outcrying against him was, "I guess she thought that I was going to say something first because I had a talk with her, too, about what was going on." He testified that all three girls were lying because they wanted to get back at him for telling them to stop being inappropriate with him. According to appellant, although A.O. and L.O. had met L.C. at some point and they had phones, they didn't talk to each other on the phone.

The jury found appellant guilty of both counts of continuous sexual abuse of a child. The court assessed punishment at thirty-five years' confinement on each count.

## B.  Legal Principles

Generally, the erroneous admission of hearsay under the outcry-witness statute is non-constitutional error. *See Rosales v. State*, 548 S.W.3d 796, 808 (Tex.

App.—Houston [14th Dist.] 2018, pet. ref'd). Non-constitutional error regarding the admission of evidence requires reversal, i.e., is harmful, only if the error affects the defendant's substantial rights. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018); *see also* Tex. R. App. P. 44.2(b); Tex. R. Evid. 103(a). Error affects substantial rights if the error had a substantial and injurious effect or influence in determining the jury's verdict. *Gonzalez*, 544 S.W.3d at 373. If we have a fair assurance from examining the record as a whole that the error did not influence the jury, or had but a slight effect, we will not overturn the conviction. *Id.* Often the erroneous admission of evidence is harmless if similar evidence is admitted without objection. *See Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010); *see also Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998) ("It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged." (quotation omitted)).

## C. Analysis

Here, the alleged error was the admission of L.C.'s hearsay statements through her mother's testimony concerning extraneous sexual offenses against L.C. But, the jury heard substantial evidence concerning the charged offenses against the complainants through the testimonies of A.O., her grandmother, her therapist, a pediatrician, and a police officer. A.O.'s testimony and statements to other witnesses were largely consistent in describing the abuse. Although she recanted at one point because she felt pressured by her mother, she explained her reason for doing so and testified at trial about the abuse. Moreover, appellant confessed to acts amounting to the offenses.

Importantly, L.C. also testified about the extraneous offenses committed against her. Although she did not testify about several instances of abuse that she

7

disclosed to her mother—i.e., the dishwashing or clothes-washing incidents—her testimony about the abuse was detailed and consistent with the type of abuse perpetrated against A.O. and L.O.—touching of her feet with his penis, lying down next to her with his penis against her butt, and touching her private parts over clothing.

In light of the substantial evidence of appellant's guilt and the detailed testimony from L.C. herself describing the extraneous offenses, we have a fair assurance that the admission of the hearsay statements did not influence the jury or had but a slight effect. *See Rosales*, 548 S.W.3d at 808–09 (harmless error from admission of testimony of outcry witnesses because the same or similar evidence was admitted through testimony of a doctor and the complainant); *Chapman v. State*, 150 S.W.3d 809, 814–15 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (harmless error from admission of hearsay from incorrect outcry witness because testimony was cumulative of other evidence, including the complainant's testimony); *see also Nino v. State*, 223 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (harmless error from improper designation of outcry witness because the child and mother provided substantially the same account of the offense); *West v. State*, 121 S.W.3d 95, 105 (Tex. App.—Fort Worth 2003, pet. ref'd) (harmless error to admit hearsay from mother who was not designated as outcry witness because the child gave detailed testimony about the assault); *Poole v. State*, 974 S.W.2d 892, 899 (Tex. App.—Austin 1998, pet. ref'd) (harmless error to admit hearsay from mother who was not properly designated as outcry witness because the children gave substantially the same testimony).

The cases upon which appellant relies are materially different. In *Beckley v. State*, the child's testimony was not cumulative of the purported outcry witness's testimony because the child denied that the defendant sexually assaulted her. *See*

827 S.W.2d 74, 78 (Tex. App.—Fort Worth 1992, no pet.).[2]  Similarly, in *Chapman v. State*, a child who was the subject of an alleged extraneous offense did not testify, and the inadmissible testimony from the purported outcry witness was not cumulative of other evidence.  *See* 150 S.W.3d at 817–18.

Appellant's first issue is overruled.

## II.  OUTCRY WITNESS: RELIABILITY

In his second issue, appellant contends that the trial court erred by admitting the grandmother's testimony about A.O.'s outcry statement because it was not reliable.

### A.  Legal Principles

As a prerequisite to admitting outcry-witness testimony describing a child's out-of-court statement, the trial court must find that "the statement is reliable based on the time, content, and circumstances of the statement."  Tex. Code Crim. Proc. art. 38.072, § 2(b)(2).  This inquiry focuses on the reliability of the statement, not the credibility of the outcry witness.  *Sanchez v. State*, 354 S.W.3d 476, 487–88 (Tex. Crim. App. 2011).  We review a trial court's determination that the statement was reliable under an abuse-of-discretion standard.  *Torres v. State*, 424 S.W.3d 245, 257 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).  We will reverse the trial court's decision only if it falls outside the zone of reasonable disagreement.  *Id.*

### B.  Background

The grandmother testified during a hearing outside the jury's presence about A.O.'s outcry statement.  In August 2018, the mother left A.O. and L.O. at the

---

[2] Moreover, the *Beckley* court applied an outdated harm analysis.  *See* 827 S.W.2d at 79 (citing former Tex. R. App. P. 81(b)(2))

grandmother's house. The grandmother, A.O., and L.O. were watching television together when A.O. "just burst out crying." When the grandmother asked why A.O. was crying, A.O. told the grandmother about what appellant had been doing. A.O. said that appellant would invite them into the bedroom and have them lie on the bed and be close to him, and he would fondle the girls on their front parts and their butts. A.O. told the grandmother that appellant would make them turn to their sides so he could be up against their back part and "rub himself down there on their bottoms." He would make the girls turn around with their head toward the foot of the bed with their feet up above so he could rub "his thing" on their feet. The grandmother understood "his thing" to mean appellant's penis. A.O.'s demeanor at the time of reporting the abuse was "very upset and crying" and she "couldn't hardly breathe while trying to talk." When the grandmother asked L.O. about what happened, L.O. "just downturned her head and just bursted out crying."

On cross-examination, appellant elicited testimony that A.O. did not disclose the times or dates of the abuse, including whether it was recent or not. Nor did A.O. tell the grandmother "the number of those acts." A.O. did, however, talk about the nature of the specific acts and give details about those acts; A.O. described "[p]robably about three" different acts. The grandmother also acknowledge that A.O. sometimes doesn't tell the truth, lies a lot, and has lied to the grandmother.

The trial court found A.O.'s statement reliable, and the grandmother ultimately testified in front of the jury about A.O.'s outcry statement.

## C.    Analysis

Appellant contends that the trial court abused its discretion in finding A.O.'s statement to the grandmother reliable because A.O. was a "known liar." Appellant also contends that there was no evidence to corroborate the statement other than

A.O.'s own statement; the statement was not clear and unambiguous; and A.O. could provide no details, including even a loose timeline of the allegations. Appellant cites no case holding that a trial court abused its discretion in finding outcry statements reliable.

The grandmother's opinion that A.O. had lied "a lot," in particular without any testimony indicating that those lies concerned false allegations of sexual abuse, does not undermine the reliability of A.O.'s outcry statement based on the "time, content, and circumstances of the statement." *See* Tex. Code Crim. Proc. art. 38.072, § 2(b)(2); *see also Madrid v. State*, No. 08-15-00195-CR, 2016 WL 3092575, at *5 (Tex. App.—El Paso June 1, 2016, no pet.) (not designated for publication) ("And evidence that the girls lie to avoid getting into trouble . . . is not remotely determinative of the outcry's reliability."). We disagree with appellant's contention that the statement was "not clear and unambiguous." A.O. told the grandmother about specific sexual acts that appellant performed on her and L.O., including how appellant would position their bodies and rub his "thing" on their feet.

Neither the failure of A.O. to disclose to the grandmother a specific time frame of the abuse, nor the lack of corroborating evidence adduced at the hearing, requires a reversal of the trial court's finding that the statement was reliable. *See Buentello v. State*, 512 S.W.3d 508, 519 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) ("But neither corroboration nor physical evidence is required for an outcry to be determined reliable."); *MacGilfrey v. State*, 52 S.W.3d 918, 921 (Tex. App.—Beaumont 2001, no pet.) ("The child is not required, as appellant appears to urge, to give an actual date or the time frame of the occurrence described in the outcry statement."). Regardless, nothing from the grandmother's testimony indicates that A.O. was unable to provide a timeline of the allegations—only that

A.O. did not provide the information to the grandmother during the outcry. A.O. provided the timeline at trial, and her outcry statement was corroborated by plenty of evidence at trial, including appellant's inculpatory statements and L.C.'s testimony about similar extraneous offenses.

The time, content, and circumstances of the statement support the trial court's finding of reliability. A.O. made the statement in August 2018 while the abuse had been perpetrated continuously throughout the summer of that year. A.O. detailed the abuse in age-appropriate terms and described specific sexual acts. She made the statements after she just "burst out crying," and her demeanor while relaying the abuse was appropriate for the circumstances. Nothing from the hearing undermines the reliability of the outcry statement such that the trial court's ruling would be outside the zone of reasonable disagreement. *See Madrid*, 2016 WL 3092575, at *5 (upholding reliability determination when girls made the outcry on their own volition, exhibited an emotional response consistent with the substance of the statement, and provided detailed descriptions of events consistent with a depiction of sexual abuse from a child's viewpoint; the content of the outcry indicated it was believable; and there was no evidence that the outcry was the product of duress, coercion, or manipulation).

Appellant's second issue is overruled.

### III. CONCLUSION

Having overruled both of appellant's issues, we affirm the trial court's judgment.

/s/     Ken Wise
         Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan.

Do Not Publish — Tex. R. App. P. 47.2(b)